UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jay Connor,<br><br>  Plaintiff,<br><br>  Vs.<br><br>AIS Solar, LLC and John Does 1-10<br><br>  Defendants. | C/A No: 2:24-cv-747-JD-MGB<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff complaining of the Defendants alleges as follows:

**TYPE OF ACTION**

1.  This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section § 37-21.

**PARTIES**

2.  Plaintiff is a resident of Charleston County, South Carolina.

3.  The calls alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4.  Defendant AIS Solar, LLC ("AIS Solar") is a North Carolina limited liability company.

5.  Upon information and belief, AIS Solar's principal office is located at 115 Pomona Drive Greensboro, NC 27407.

6.  AIS Solar makes calls to residents of South Carolina.

7.  AIS conducts and transacts business in South Carolina.

1

8.  The true identities of defendants John Doe 1-10 are unknown at this time.

## VENUE AND JURISDICTION

9.  This cause of action arises out of conduct of Defendants initiating telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

10. Plaintiff is a resident of Charleston County.

11. Pursuant to *Mims v. Arrow Fin. Services. LLC* 565 U.S. 368, 372 (2012), this court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

## The Telephone Consumer Protection Act

12. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

2

telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

13. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

14. The TCPA provides a private right of action under section 47 U.S.C § 227 (c)(5) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

### The South Carolina Telephone Privacy Protection Act

15. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, et seq.

16. The SCTPPA requires that "at the outset of a telephone solicitation, a telephone solicitor shall provide…the name of the person on whose behalf the telephone solicitation is being made." 37-21-40(A).

17. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

18. The SCTPPA provides a private right of action under section S.C. Code § 37-21-80 for a person who has received a telephone call in violation of the regulations prescribed under the statute.

### Factual Allegations

19. The telemarketing campaign alleged herein included placing multiple solicitation calls (the "Calls") to Plaintiff's number to sell solar panels.

20. Defendant AIS Solar placed the alleged Calls to Connor's wireless number.

#### Telephone calls to Plaintiff

21. Plaintiff Connor is a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff is the sole subscriber to the wireless telephone number (843) 281-XXXX.

23. Plaintiff uses the cellular telephone as a personal residential number.

24. Plaintiff placed the number (843) 281-XXXX on the National Do Not Call Registry in April 2022.

4

25. Defendants placed six calls to Plaintiff transmitting the same area code prefix combination (912) 494-833X, inserting different numbers as the last digit.

26. A list of all the alleged Calls is attached hereto and incorporated herein as Exhibit A.

27. On 12/11/23, Plaintiff received a call ("First Call") from the Defendants.

28. The First Call transmitted the caller ID (912) 494-8334, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

29. The purpose of the First Call was to deliver a telephone solicitation.

30. The First Call was unsolicited.

31. The caller began the First Call by saying "Hi George", and identified himself only as "Kevin".

32. Plaintiff immediately suspected the First Call was an unsolicited telemarketing call because the caller did not volunteer his full name, and because he asked for the wrong person.

33. At the outset of the First Call, Kevin did not provide a company name, an address, or a working telephone number for the company.

34. Later in the First Call, Kevin said he was calling for George Powers.

35. Plaintiff does not know anyone named George Powers or has ever knowingly corresponded with George Powers. According to the following link, Mr. Powers passed away in 2022. (https://www.dignitymemorial.com/obituaries/little-river-sc/george-powers-10564019)

36. Plaintiff engaged in the conversation with "Kevin", and expressed interest in the solar panels sales appointment to identify the source of the call.

37. During the First Call, Kevin entered an appointment to meet with an AIS sales person at 9:00 am on 12/12/23.

38. During the First Call, Kevin initiated the sales appointment request to Plaintiff via a link in an email from Payton Greenway, a sales representative from AIS Solar.

39. The email did not provide a telephone number, the last name for Kevin, or a company address for AIS Solar.

40. A copy of the email is attached hereto and incorporated herein as Exhibit B.

41. After receiving the email from AIS, Plaintiff attempted to contact Payton Greenway by email to acquire a working telephone number for AIS, an address for AIS Solar, and request how AIS acquired his number.

42. Instead, Plaintiff continued to receive anonymous calls promoting another solar sales appointment.

43. On 1/2/24, Plaintiff received a call ("Second Call") from the Defendants.

44. The Second Call transmitted the caller ID (912) 494-8331, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

45. The purpose of the Second Call was to deliver a telephone solicitation.

46. The Second Call dropped before connecting to a representative, indicating the use of an automatic telephone dialing system, also known as an ATDS.

47. On 1/3/24, Plaintiff received a call ("Third Call") from the Defendants.

6

48. The Third Call transmitted the caller ID (912) 494-8337, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

49. The purpose of the Third Call was to deliver a telephone solicitation.

50. The Third Call dropped before connecting to a representative, indicating the use of an automatic telephone dialing system, also known as an ATDS.

51. On 1/4/24, Plaintiff received a call ("Fourth Call") from the Defendants.

52. The Fourth Call transmitted the caller ID (912) 494-8337, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

53. The purpose of the Fourth Call was to deliver a telephone solicitation.

54. During the Fourth Call, Plaintiff spoke with a person who identified herself as "McKayla" with "Local Experts", a non-existent company.

55. At the outset of the Fourth Call, "Mckayla" did not offer her last name, a valid company name, an address or working telephone number for the company.

56. During the Fourth Call, Plaintiff requested the name of a company from McKayla multiple times. She would only reply "Local Experts".

57. During the Fourth Call, Plaintiff agreed to a call back on 1/5/24 to identify the source of the harassing calls.

58. On 1/5/24, Plaintiff received a call ("Fifth Call") from the Defendants.

59. The Fifth Call transmitted the caller ID (757) 970-3875.

60. The purpose of the Fifth Call was to deliver a telephone solicitation.

7

61. During the Fifth Call, the caller identified herself as Tanya Booker with AIS Solar.

62. In the Fifth Call, Ms. Booker indicated she was calling as a follow-up to the call from the previous day from McKayla (Fourth Call), and provided specific information from the conversation in the Fourth Call.

63. During the Fifth Call, Ms. Booker sent an email to Plaintiff. The mail provided a working telephone number for AIS for the first time since the Calls began in December.

64. Upon receipt of the email from Ms. Booker, Plaintiff immediately requested that she add his number to AIS' Do Not Call List.

65. However, the calls continued after Plaintiff's Do Not Call request.

66. On 1/8/24, Plaintiff received a call ("Sixth Call") from the Defendants.

67. The Sixth Call transmitted the caller ID (912) 494-8331, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

68. The purpose of the Sixth Call was to deliver a telephone solicitation.

69. The Sixth Call was made after Plaintiff's Do Not Call Request to Defendant AIS.

70. During the Sixth Call, the caller identified herself as "Mckayla".

71. Mckayla is the same representative that called Plaintiff in the Fourth Call.

72. During the Sixth Call, Mckayla referenced previous solicitation telephone calls made to Plaintiff, including the First Call on 12/11/23.

73. On 1/17/24, Plaintiff received a call ("Seventh Call") from the Defendants.

74. The Seventh Call transmitted the caller ID (912) 494-8338, a non-working number in that no person answers the number when dialed, and calls are forwarded to an unidentified voice mailbox.

75. The Seventh Call was made after a Do Not Call Request.

76. The purpose of the Seventh Call was to deliver a telephone solicitation.

77. The Seventh Call dropped before connecting to a representative, indicating the use of an automatic telephone dialing system, also known as an ATDS.

78. Upon information and belief, Plaintiff has received additional calls from the Defendants.

79. On 1/16/24, Plaintiff sent a letter via certified mail to AIS requesting evidence of valid consent for the Calls, and for a copy of AIS' Do Not Call Policy. Plaintiff has not received evidence of valid consent for the Calls or a copy of AIS' Do Not Call Policy.

## CAUSES OF ACTION
### Count One:
### Violations of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

80. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. By placing seven (7) telemarketing calls to the Plaintiff's telephone number, which he registered on the National Do-Not-Call Registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff's number on their Do-Not-Call list, Defendants jointly and severally, violated 47 U.S.C. § 227 (c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

82. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

## Count Two:

## Violations of the SCTPPA

83. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

84. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do Not Call Registry (b) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made" (c) calling a telephone number after a Do Not Call Request.

85. The Defendants' violations were negligent and/or knowing.

86. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys' fees pursuant to the SCTPPA;

- For unspecified punitive damages in an amount to be determined by the jury.

Respectfully Submitted,

*[signature]*

Jay Connor Plaintiff, *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
Jayc650@hush.com
(843) 281-4444 (Residential)

February 13, 2024